UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAM WONG,<br><br>    Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY, et al.,<br><br>    Defendants. | Case No. 18-cv-00353-JST<br><br>**ORDER SCREENING FOURTH AMENDED COMPLAINT; ORDERING SERVICE ON DEFENDANT MILLER** |

Plaintiff, a state prisoner at Glenn Dyer Jail, has filed a *pro se* civil rights action under 42 U.S.C. § 1983. His fourth amended complaint (ECF No. 62) is now before the Court for review under 28 U.S.C. § 1915A.

## DISCUSSION

**A.  Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."' *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Although a complaint "does not need detailed factual allegations [in order to state a complaint], . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.      Complaint**

    **1.      Factual Allegations**

Plaintiff alleges that on September 9, 2017, he was housed at Santa Rita Jail ("SRJ"). On that day, in retaliation for informing deputies that if they used force to transfer him, he would file lawsuits against them for use of excessive force, Plaintiff was transferred to Housing Unit No. 2, F-Pod, which is unfit for habitation, and housed with mentally ill inmates, despite not being mentally ill.

Specifically, Plaintiff alleges that on September 9, 2017, when he refused to move to Housing Unit No. 6, F-Pod, he was placed in Housing Unit No. 6's isolation cell. Named defendant Deputy Dominguez summoned Deputy Rasendez to Plaintiff's isolation cell. Deputy Rasendez, without provocation, threatened to send five to six deputies to forcibly transfer Plaintiff to F-Pod. Plaintiff responded that if the deputies roughed him up, he would file a lawsuit against them for use of excessive force. In response to the threat of litigation, Defendant Domingeuz falsely informed named defendant SRJ Deputy Miller that Plaintiff had threatened to fight jail deputies. In response to Plaintiff's threat of litigation, Defendant Miller then informed named defendant Deputy McBride of Defendant Dominguez's false accusation, and also falsely stated that he had spoken with Plaintiff soon after learning of Plaintiff's alleged threat to fight correctional officials. Immediately after, named defendant SRJ Deputy McBride escorted Plaintiff

2

out of Housing Unit No. 6, stating that he had heard that Plaintiff had threatened to fight deputies and informing Plaintiff that he was no longer going to F-Pod in Housing Unit No. 6, but would now be transferred to F-Pod in Housing Unit No. 2. Housing Unit No. 2 is the administrative segregation unit, and F-Pod is set aside to house mentally ill inmates assigned to administrative segregation. Defendant McBride informed Plaintiff that Housing Unit No. 2, F-Pod was covered in feces. Upon arriving at Housing No. 2, Defendant McBride was informed that there were vacant cells available in B-Pod and C-Pod, but Defendant McBride insisted on housing Plaintiff in F-Pod. ECF No. 62 at 4–7.

Plaintiff was assigned to F-Pod, Cell 13. When Plaintiff and Defendant McBride arrived at F-Pod, water with feces flooded cells 10 through 14. Prior to placing Plaintiff in the cell, Deputy McBride inspected the cell. Dried feces were clumped and smeared on the desktop and walls; a puddle of urine was on the floor; urine and saliva stained the toilet seat; dried blood was smeared on the floor and walls; dried water feces spotted the edges of the bunkbed; dried feces were smeared under the top bunkbed; and there were dried and wet feces in the gap between the cell door and the floor. The outtake ventilation did not work. From September 9 to September 18, 2017, Plaintiff was forced to sleep and eat next to feces. These unsanitary conditions exposed Plaintiff to deadly diseases such as Hepatitis C. In addition, Plaintiff was subjected to constant and excessive noise caused by mentally ill inmates who continually screamed, and kicked and banged on their cell doors and walls. ECF No. 62 at 6–7.

Plaintiff has no mental or psychological issues that require him to be housed amongst the mentally ill. Plaintiff was not found guilty of any rule violation related to this administrative segregation confinement. The rules violation report dated September 8, 2017, which was later dismissed, does not allege that Plaintiff threatened to assault deputies; rather, it states that he was making, and in possession of an intoxicant, and interfered with the proper running of a facility. Defendant McBride housed Plaintiff in Housing Unit No. 2, F-Pod, in retaliation for Plaintiff's threats of litigation against Defendants Dominguez and Miller. ECF No. 62 at 7–8. Plaintiff did not receive written notice prior to his administrative segregation confinement and was unable to challenge his placement in administrative segregation. ECF No. 62 at 9.

3

Conditions in administrative segregation are punitive. Inmates housed in administrative segregation are only allowed out of their cells for one hour every forty-eight hours; are only allowed two to three hours of out-of-cell recreational time weekly; and must be handcuffed and shackled whenever they are out-of-cell. These harsh living conditions have caused Plaintiff to suffer from depression, anxiety, and paranoia, conditions that Plaintiff did not have previously. ECF No. 62 at 11–12.

On September 12, 2017, Plaintiff submitted grievance number 17-1744 to SRJ Deputy Plunkett, alleging that the living conditions in Housing Unit No. 2, F-Pod, Cell 13, were inhumane. Deputy Plunkett failed to address Plaintiff's living conditions. ECF No. 62 at 12.

On September 19, 2017, Plaintiff was released from Housing Unit No. 2, F-Pod. However, he remained in administrative segregation isolation. On October 18, 2017, Plaintiff was transferred to Glenn Dyer Jail ("GDJ"). On November 18, 2017, he was transferred back to Santa Rita Jail. On December 15, 2017, Plaintiff was transferred back to Glenn Dyer Jail. Throughout these transfers, Plaintiff remained housed in administrative segregation. Plaintiff alleges that throughout these transfers, Defendant McBride and named defendants GDJ Classification Unit Deputy Almeria and GDJ Classification Unit Deputy Walters had numerous opportunities to release him back into general population but failed to conduct meaningful reviews of Plaintiff's housing placement. ECF No. 62 at 12–13.

Plaintiff alleges that Alameda County, Alameda County Sheriff Ahern, SRJ Classification Unit Sergeant Calegari, SRJ Classification Unit Sergeant Hattaway, and GDJ Classification Unit Sergeant Griffits have failed to supervise their subordinates, thereby allowing them to deviate from established departmental rules that prohibit indefinite detention in administrative segregation; and allowing them to establish the following customs and practice: housing inmates in administrative segregation without affording procedural due process protections; housing inmates indefinitely in administrative segregation; and housing inmates in administrative segregation even though the disciplinary finding does not require such housing. ECF No. 62 at 14–17.

/ / /

### 2. Legal Claims

Plaintiff has stated the following cognizable claims.

Plaintiff's allegations that, in retaliation for Plaintiff stating that he would sue prison officers if they used excessive force to force a cell move, Defendant Dominguez falsified a disciplinary report against him and caused him to be placed in administrative segregation, Defendant Miller falsely told Defendant McBride that he had confirmed Defendant Dominguez's report, and Defendant McBride housed Plaintiff in a feces-covered cell amongst mentally ill inmates, state cognizable First Amendment retaliation claims against Defendants Dominguez, Miller and McBride. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.") (footnote omitted).

Plaintiff's allegations that Defendant McBride housed him in Housing Unit No. 2, F-Pod, Cell 13, knowing that the cell was covered in feces and otherwise uninhabitable, and that Defendant Plunkett refused to address these living conditions despite Plaintiff's request state cognizable Eighth Amendment claims. *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."), *amended*, 75 F.3d 448 (9th Cir. 1995).

Plaintiff's allegations that he was not provided with written notice or a hearing prior to being housed in administrative segregation; that he did not receive notice of the disciplinary infraction authored by Defendant Dominguez until he was notified that it was dismissed; that Defendants McBride, Almeria, and Walters failed to provide meaningful review of his placement and retention in administrative segregation; and that he has not received written notice of any disciplinary violation pursuant to which he is being retained in administrative segregation state cognizable due process claims against Defendants McBride, Dominguez, Almeria and Walters. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (essential due process principle is

5

that deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to nature of case); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (suggesting that conditions of confinement which violate Eighth Amendment constitute atypical and significant hardship triggering right to procedural due process).

Plaintiff's allegations that Defendants Alameda County, Ahern, Calegari, Hattaway, and Griffits failed to supervise their subordinates and allowed for the following customs or practice which violate due process — violation of departmental rules prohibiting indefinite detention in administrative segregation; housing inmates in administrative segregation without affording procedural due process protections; housing inmates indefinitely in administrative segregation; and housing inmates in administrative segregation when not required — state cognizable due process claims. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984) (supervisor can be held liable under § 1983 where constitutional deprivation resulted from supervisor's failure to properly train or supervise personnel or from custom or policy for which supervisor was responsible); *Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) ("To impose municipal liability under § 1983 for a violation of constitutional rights plaintiff must show: (1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.") (internal citation and quotation marks omitted).

**CONCLUSION**

For the foregoing reasons, the Court hereby orders as follows:

1. The fourth amended complaint states cognizable First Amendment claims against Santa Rita Jail Officers Dominguez, Miller, and McBride; cognizable Eighth Amendment claims against McBride and Santa Rita Jail Deputy Plunkett; a cognizable due process claim against McBride; Dominguez, Glenn Dyer Jail Classification Unit Deputy Almeria, Glenn Dyer Jail Classification Unit Deputy Walters, Santa Rita Jail Classification Unit Sergeant Calegari, Santa Rita Jail Classification Unit Sergeant Hattaway, Glenn Dyer Jail Classification Unit Sergeant

1 | Griffits, Alameda County Sheriff Ahern, and Alameda County.

2. All defendants but Santa Rita Jail Officer Miller have been served. The Clerk shall therefore issue summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the fourth amended complaint with all attachments (ECF No. 62), and a copy of this Order on Santa Rita Jail Officer Miller at Santa Rita Jail, 5325 Broder Blvd, Dublin, CA 94568.

3. The briefing schedule remains unchanged. Defendants shall file their dispositive motion by April 26, 2019. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

**IT IS SO ORDERED.**

Dated: February 14, 2019

_____
JON S. TIGAR
United States District Judge