UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KAM WONG,<br><br>  Plaintiff,<br><br>  v.<br><br>ALAMEDA COUNTY, et al.,<br><br>  Defendants. | Case No. 18-cv-00353-JST   (RMI)<br><br>**ORDER RE: PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY RESPONSES**<br><br>Re: Dkt. Nos. 187, 188 |

Now pending before the court are Plaintiff's 87-page "Amended Motion to Compel Discoveries That Remain in Dispute" (dkt. 187) and his "Motion to Compel Further Response (sic) to Discovery" (dkt. 188). Defendants have responded (dkts. 190, 191), and Plaintiff has not submitted reply briefs in the time allotted. As an initial matter, Plaintiff should be reminded that while his *pro se* status entitles his pleadings and papers to liberal construction, it does not completely exempt him from page limitations or meet and confer requirements expressed in this Court's local rules or in the federal rules. Going forward, Plaintiff is reminded that his motions and accompanying briefs must adhere to the page limitations and content requirements described in this Court's rules and in the federal rules. *See* Local Civ. R. 7-4. In any event, as described below, Plaintiff's motions are granted in part and denied in part.

Generally speaking, Plaintiff's motions signify little more than his disagreement with Defendants' responses to his oftentimes ill-phrased discovery requests, and thus, his requests to compel "further" responses or his contention that matters "remain in dispute," is in fact another way of stating that he simply does not agree with Defendants' responses and wishes the court to force Defendants to give a different response. By way of background, Defendants contend that

Plaintiff was found with a contraband alcoholic beverage in his cell and when he refused to voluntarily submit to a housing unit reassignment, his intransigence and refusal to follow the directions of the Santa Rita jail guards were construed as a threat to the safe and secure operation of the facility, resulting in Plaintiff being forcibly extracted from his cell and housed in administrative segregation. *See* Defs.' Opp. (dkt. 190) at 4. Further, Defendants submit that at the Glen Dyer Jail, Plaintiff was housed in administrative segregation for his own safety due to having testified as a prosecution witness in a high profile criminal case. *Id*. Defendants also add that on multiple occasions, Plaintiff refused protective custody as well as an opportunity to be transferred from administrative isolation to a status known as maximum separation. *Id*. When Plaintiff was moved into F-pod, Housing Unit 6, Defendants submit that it was due to the disciplinary incident relating to the two occasions on which a contraband alcoholic beverage was discovered in his cell. *Id*. Defendants also note that when Plaintiff complains that he was not released from administrative segregation upon the dismissal of a disciplinary complaint, he neglects to mention that the dismissed disciplinary matter was *unrelated* to his housing unit placement. *Id*. at 5. In other instances, Defendants submit that Plaintiff seeks to compel further responses from Defendant McBride despite being previously denied leave to propound additional interrogatories, and despite the fact that Defendant McBride had already responded to previous interrogatories about housing conditions in F-pod, Housing Unit 2. *Id*. at 6. In short, Defendants contend that Plaintiff's deluge of discovery requests are by and large a series of improperly phrased and loaded questions or requests based on false premises, that they are argumentative and repetitive, or that they simply represent Plaintiff's refusal to accept an answer previously given. *Id*. at 6-9.

A review of Plaintiff's 87-page motion to compel reveals that the first 28 pages seek an order from the court overruling Defendants' objections and compelling them to respond to 32 individual requests for admission. In each case, Plaintiff sets forth the specific request for admission, followed by a recitation of Defendants' objections, along with a series of generally conclusory statements through which Plaintiff expresses his generalized and repetitive disagreement with Defendants' objections. *See* Pl.'s Mot. (dkt. 187) at 1-28. For all but one of these 32 RFAs (often the same or substantially similar requests addressed individually to various

2

defendants), Plaintiff's conclusory statements fail to establish the relevance of the RFA to any claim in his operative complaint, nor is any such relevance apparent on the face of the requests. By way of example, in RFA No. 9, Plaintiff asks one defendant to admit that mentally ill prisoners and those without mental illness are to be housed in separate housing units or pods; or, in RFA No. 10, Plaintiff asks the same defendant to admit or deny that he was "fully aware" that some persons at the Glen Dyer facility had started a hunger strike to protest prolonged housing in administrative segregation units; or, whether a particular housing unit was designated to house inmates suffering from mental illnesses. *See generally id*. at 1-28. Plaintiff's numerous requests of this sort appear untethered from his claims, and his conclusory and repetitive statements in support of their compelled production fail to satisfy his burden of establishing their relevance.

Other RFAs, aside from not appearing relevant to any of Plaintiff's claims, are clearly argumentative, call for legal conclusions, call for speculation, are based on false factual premises, or are otherwise improperly phrased due to vagueness, ambiguity, or being overbroad. For example, in RFA No. 19, Plaintiff seeks the admission of a legal conclusion from Defendant Ahern to the effect that "inmates have a liberty interest to remain free from excessive restraints and confinements in Ad/Seg, created by the State of California" (*see id*. at 4); or, in a number of RFAs, Plaintiff seeks information that seems to assume that his placement in administrative segregation at the Glen Dyer jail was punitive despite the fact that Defendants have repeatedly stated that it was not punitive but instead was related to his compromised safety by virtue of being a prosecution witness in a high profile criminal trial; or, in RFA No. 16, where Plaintiff seeks another admission of a legal conclusion from a Defendant when asking that person to "[a]dmit that inmates have a right to sanitary and unharmful (sic) living conditions." *See id*. at 4-7, 9-13, 26. Similarly, in another RFA, Plaintiff asks a Defendant to opine as to a legal conclusion by way of a vague and ambiguous RFA that seeks an admission "that the conditions in H.U.#2/F-Pod is (sic) inhumane to house an inmate for an extended period of time." *Id*. at 27

Other RFAs are similarly based on false factual premises, such as when Plaintiff seeks an admission to the effect that he should have been released from administrative segregation when an unrelated disciplinary report was dismissed. *Id*. at 13. Additionally, most of Plaintiff's RFAs are

3

vague and ambiguous and make little to no sense such as RFA No. 28 which states, "[a]dmit or deny that plaintiff should have been housed in an appropriate unit," or an RFA that asks a classification officer to admit or deny whether it is his duty and responsibility to release prisoners from administrative segregation units "in a timely manner." *Id*. at 14, 22. Another example is manifest in RFA No. 21 where in a similarly ambiguous and indeterminate manner, Plaintiff seeks an admission to the effect "that after you fully read Plaintiff's grievance complaint, you did nothing to abate or alleviate his suffering." *Id*. at 28. Other RFAs are impermissibly argumentative such as RFA No. 4 which states: "[a]dmit that you knew about the inhumane and unsanitary conditions" in Housing Unit 2, F-pod. *Id*. at 19.

In conclusion, the undersigned finds that all but one of Plaintiff's RFAs either seek irrelevant information, are argumentative, are based on faulty assumptions, seek speculation, call for legal conclusions, or are otherwise improperly phrased by being vague, ambiguous, or overbroad. However, Plaintiff's RFA No. 1 as propounded to Defendant McBride (who is a classification deputy at the Santa Rita Jail) appears to be properly phrased, and seems to be attended with a sufficient degree of relevance such as to warrant an answer – the RFA asks Deputy McBride to admit or deny being Housing Unit No.2's classification deputy in charge. *See id*. at 18. As to this single RFA, Plaintiff's Motion to Compel is **GRANTED**. As to every other RFA (*id*. at 1-18, 19-28), Plaintiff's Motion to Compel (dkt. 187) is **DENIED**.

Plaintiff also seeks to compel responses to some 52 interrogatories addressed to various Defendants (*see id*. at 28-86) all of which suffer from one or more of the defects described above. For example, the first of the interrogatories described in Plaintiff's motion (*id*. at 28), ROG No. 5, asks Alameda County Sheriff Gregory Ahern why he did not put an end to indefinite confinement in administrative segregation at the Glen Dyer Jail once certain inmates reportedly initiated a hunger strike in protest. Putting aside Defendants' contention that Plaintiff's administrative segregation in that jail was due to his rendering testimony for the prosecution in a high profile case and was effected to safeguard Plaintiff from violence at the hands of other inmates, and putting aside the loaded nature and improper phrasing of the question, the interrogatory is untethered from any of Plaintiff's claims and its relevance is neither inherently apparent nor has been satisfactorily

4

explained by Plaintiff's conclusory statements. *See id*. at 28-29. Other interrogatories posed to Sheriff Ahern are similarly based on false factual premises and seek information untethered to Plaintiff's claims. For example, ROG No. 7 asks the Sheriff why he allowed his subordinates to continuously confine inmates in administrative segregation beyond what Plaintiff contends is a 30-day limit for such placement; or, ROG No. 9 asks why the Sheriff did not put an end to the practice of indefinitely placing inmates in administrative segregation. *Id*. at 29-32. Despite the fact that Defendants have filed an Answer (dkt. 175) to Plaintiff's Fifth Amended Complaint, in ROG No. 10, Plaintiff needlessly asks Sheriff Ahern if he disputes or contests the allegation contained in Plaintiff's operative complaint that Alameda County has a custom or practice of indefinitely confining inmates in administrative segregation. *Id*. at 32-34. Further, ROG No. 11 is particularly onerous in that it asks Sheriff Ahern to potentially disprove a negative by stating all facts that support his contention that Alameda County does not have a practice or custom under which inmates are housed indefinitely in administrative segregation. *Id*. at 34-35.

Without parading through the morass of listing and describing each and every one of the several dozen improper discovery requests that are the subjects of Plaintiff's motion to compel, the court will simply note that many of them are heavily loaded questions in the nature of asking the opposing party to explain why they violated Plaintiff's rights. For example, in ROG No. 4, Plaintiff asks Defendant Hattaway (a classification lieutenant) why he condones and allows his subordinates to confine inmates in administrative segregation for more than the 30-day period which Plaintiff insists is the maximum permissible period for such placement; in ROG No. 10, Plaintiff asks the same lieutenant to explain why he and his sergeants conduct inmate housing status reviews outside their presence. *Id*. at 43-44. Another illustrative example of this sort of interrogatory is manifest in ROG No. 6 where Plaintiff asks, "[w]hy do you persistently performs (sic) meaningless Ad/Seg status reviews?" *Id*. at 51. Plaintiff's penchant for either heavily loading his questions with false or unproven factual premises, or his penchant for asking questions about other inmates such that the questions are untethered to his individually-brought claims (i.e., Plaintiff is asking questions that might be appropriate in a class action lawsuit but which seem irrelevant to his individually brought claims), dominate the entirety of the 52 interrogatories

contained in his motion to compel. By way of yet another example, in ROG No. 18, Plaintiff asks what actions have been taken to improve the conditions endured by inmates, "[i]n light of all the revelations of inmates being mistreated, abused, and being confined in Ad/Seg indefinitely . . ." *Id*. at 47.

In short, the undersigned finds that all of Plaintiff's interrogatories (*see id*. at 28-86) either seek irrelevant information, are argumentative, are based on faulty assumptions, seek speculation, call for a legal conclusion, or are otherwise improperly phrased by being vague, ambiguous, or overbroad. Accordingly, on that basis, Plaintiff's request to compel Defendants to respond to any of these interrogatories is **DENIED**. Further, Plaintiff also seeks $400 in payment of costs for having to file his Motion to Compel (dkt. 87). *Id*. at 86-87. Because Plaintiff's motion was not substantially justified, and because the overwhelming number of his requests were baseless and were denied, his request for payment of fees and costs is likewise **DENIED**.

Also pending before the court is Plaintiff's Motion to Compel Further Response (sic) to Discovery (dkt. 188). Therein, Plaintiff seeks to compel further responses to three requests for admission. In RFA No. 1, Plaintiff seeks further responses to the request for Defendant Plunkett to admit that Housing Unit No. 2, F-Pod houses mentally ill inmates in administrative segregation. *Id*. at 1. However, Defendants have repeatedly told Plaintiff that Housing Unit 2, F-Pod at the Santa Rita Jail is designated only as administrative segregation and that "it was not designated for Mental Health." *See* Defs.' Opp. (dkt. 191) at 2. Accordingly, it appears that Plaintiff is attempting to beat the proverbial dead horse by seeking any "further response" in this regard. As for the other two RFAs for which Plaintiff seeks further responses, both are based on false premises as well as being improperly phrased and seeking irrelevant information. In RFA No. 2, Plaintiff asks Defendant Plunkett to admit that mentally ill inmates in administrative segregation are "constantly screaming out [of] their cell doors, [and] kicking and banging on cell doors and walls daily," while RFA No. 3 asks Defendant Plunkett to admit that mentally ill inmates in administrative segregation throw human waste all over their cells and in the pod areas on a regular basis. *See* Pl.'s Mot. (dkt. 188) at 2-6. Accordingly, because RFA Nos. 1-3 are improperly phrased, based on false factual premises, and seek irrelevant information that is untethered to any claim in Plaintiff's

operative complaint, his request to compel (dkt. 188) any further responses in this regard is **DENIED**.

### CONCLUSION

For the reasons stated above, Plaintiff's RFA No. 1, as propounded to Defendant McBride (who is a classification deputy at the Santa Rita Jail) is properly phrased, and is attended with a sufficient degree of relevance such as to warrant an answer. Deputy McBride is directed to admit or deny being the classification deputy in charge at Housing Unit No. 2 at the Santa Rita Jail. *See id*. at 18. As to this single RFA, Plaintiff's Motion to Compel (dkt. 187) is **GRANTED**. In all other respects, Plaintiff's Motion to Compel (dkt. 187), and his Motion to Compel Further Responses to Discovery (dkt. 188) are **DENIED**.

**IT IS SO ORDERED.**

Dated: November 3, 2020

ROBERT M. ILLMAN
United States Magistrate Judge